# Baldwin v. Kansas City, Memphis & Birmingham Railroad Co.

*Action against Railroad Company to recover Damages for Breach of Contract.*

1. *Action against railroad company for breach of a contract; uncertainty as to time renders contract invalid.*—An action against a railroad company in which the plaintiff claims damages because the defendant contracted to put in a switch and side track at a sand pit owned by plaintiff and to haul sand from such pit at a certain fixed price per car load, and after putting in the switch and side track, as agreed upon, and hauling the sand at the stipulated rate for a long time, by which arrangement the plaintiff was able to and did sell many car loads of sand and had contracts for many more, and then ignoring the contract between it and plaintiff the defendant increased the freight rate to an unreasonable charge and tore up the switch and side track to the great damage of plaintiff, is an action *ex contractu;* but the contract counted upon is void for uncertainty and a demurrer to the complaint on the ground that such contract is not legally enforceable because of its uncertainty and of its being determinable at the will of either party, is well taken, and the plaintiff can not maintain such action.

2. *Same; action on the case; misjoinder of causes of action.*—In such a case, where the plaintiff amends his complaint by adding counts in which he claims damages resulting to him by reason of the defendant inducing him, by the construction of the switch and side track and giving him a certain rate of freight on the sand shipped, to incur heavy expense in opening the sand pit and subjecting him to liability on many contracts made for the sale and delivery of sand, and, thereafter, disregarding its duties to plaintiff in the premises, tearing up the switch and side track and increasing the freight charges to an unreasonable rate, such additional counts are in case; and a demurrer

thereto on the ground of a misjoinder of causes of action is properly sustained.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

Appellant, as plaintiff, instituted suit against the appellee on the 30th day of April, 1892. There was but one count in the original complaint which contained substantially the following averments:

That the plaintiff claimed of the defendant five thousand dollars as damages because the plaintiff, being the owner of a certain undeveloped sand pit on defandant's line of railroad, about seventy miles west of Birmingham, desiring to open said pit and ship sand therefrom to the City of Birmingham and points between Birmingham and said pit, before doing so, obtained an agreement from the defendant that if plaintiff would open said sand pit defendant would put in a side track and switch at said point, and would haul his sand at the rate of $9 per car load, of 40,000 pounds, afterwards reduced the freight on said sand to Birmingham to $8 a car load of 40,000 pounds, so as to equalize said defendant's rate on said sand to that shipped by other roads to Birmingham; that defendant did put in said side track and switch, and plaintiff opened his sand pit and commenced the shipment of sand at those rates, and continued at those rates for some time; and that in order to do so plaintiff went to a large expense in widening the cut at said pit and incurred other expenses named in the complaint, after relying upon said rate of freight; plaintiff entered into contracts with various parties in Birmingham and Bessemer to deliver sand at certain prices; plaintiff also built up a large wholesale and retail trade for his sand in Birmingham; and that after the plaintiff had entered into the contract for the delivery of a certain number of car loads of sand, and had built up a retail and wholesale trade, the defendant increased its freight rates on sand from the sand pit to Birmingham and other points, and notified the plaintiff that it was to take effect from the first day of May, 1891, and that the rate of freight on sand shipped from said pit would be increased to $12 per car of 40,000 pounds, thus capriciously and willfully breaking up plaintiff's business, and rendering him unable to fulfill his contracts and orders which he had made

for the delivery of the sand; and that in addition to increasing the said rate of freight to $12 per car, and to prevent plaintiff from shipping sand from said sand pit to fulfill his contracts and orders, the defendant tore the switch out from the side track, at said sand pit, and thereby effectually prevented the operation of the sand pit by the plaintiff.

On the 6th day of April, 1895, the plaintiff was allowed, against the objection of the defendant, to amend his complaint by filing two additional counts, numbered two and three. The second count of the complaint so filed claimed damages of the defendant, and avers that in the early part of 1888 the plaintiff was the owner of a certain sand bank near Glen Allen, which was a station on defendant's road, seventy miles west of Birmingham, and that the defendant, in order to increase its freight and traffic over its line, induced plaintiff to open said pit, and expend a large amount of money in so doing, and avers that he did open the pit and shipped sand over defendant's road, from the pit to Birmingham, at a freight rate of $8 per car load until the month of May, 1891; and plaintiff avers that the said rate of freight on sand per car load hauled from said point was a reasonable price and rate of freight; and thereby it became the duty of defendant, as a common carrier of freight and passengers, to haul and carry sand for plaintiff from the said point to Birmingham, at the rate of $8 per car load, as aforesaid, and to maintain and preserve the said side track or switch, at said point, which the defendant had established, but plaintiff avers that, disregarding its duties in the premises, the defendant, in June, 1891, tore up its switch and side track at the sand pit and refused to haul and carry sand for plaintiff from said sand pit to Birmingham at said freight rate of $8 per car. And said count further averred that plaintiff had suffered great damage by reason of the neglect of said defendant to discharge its duty as a common carrier, growing out of the fact that during the time he was operating the sand pit upon said freight rate of $8 per car, he had entered into various contracts for the delivery of sand to various parties, naming them in the count, aggregating several hundred car loads of sand; that he built up a profitable business in the sale of sand in Birmingham, and had spent a large amount of money, which is

named in the complaint, in developing the pit and building bins in Birmingham, and that while his (plaintiff's) said contracts for the sale and delivery of sand were in force, defendant failed in its duty as a common carrier of freight to carry and haul said sand at a reasonable rate, and increased its freight rate on sand from $8 per car, which was a reasonable rate, to $12 per car, which was an unreasonable rate of freight from said point; and that it willfully and capriciously broke up the plaintiff's business in said sand, and rendered plaintiff unable to fulfill the contract he had entered into, and plaintiff avers that the profit per car load on said sand which he was able to make, if the defendant had hauled the sand at a resonable rate, and his sale of sand at the price he had contracted to sell it, would have been to the plaintiff $5.00 per car; and that the defendant prevented the plaintiff from shipping sand from said point, and from fulfilling his contract, by tearing up and removing said switch which defendant had erected at said sand pit.

The third count of the complaint, as amended, was substantially the same as the second count, averred the same facts, with reference to the freight rate and the opening of the pit and the construction of the switch and side track, and the shipment of sand, and contracts for the sale and delivery of sand by the plaintiff, and that there was a profit of $5.00 per car to plaintiff in the sale of sand if he could have carried out his contracts, and it averred that the increase of freight rates from $8.00 to $12.00 per car, and that $8.00 was a reasonable rate of freight for carrying sand from that point to Birmingham, and that $12 was unreasonable and extortionate, &c., and it charges the defendant with having caused the plaintiff to have suffered the said damages by reason of its negligence, and refusing to discharge its duty to plaintiff as a common carrier, in that it had refused to haul and carry plaintiff's sand at a reasonable rate of freight, and in having torn up the side track and switch at said sand pit, which prevented the plaintiff from operating his said sand pit altogether.

The defendant demurred to both the original count of the complaint, and the counts added by amendment. The demurrers to the original count of the complaint was upon several grounds, the substance of which were the

following : (1.) Because it does not appear from its allegations whether the plaintiff relies upon the defendant's promise to give plaintiff a rate of 2¼ cents per hundred pounds, or the promise to give plaintiff the rate of 2 cents per hundred pounds, and the complaint is vague and uncertain in that respect. (2.) It is not alleged in the complaint that the defendant agreed or promised to maintain the rate of 2¼ cents, and to maintain the side track for any definite time, and it appears from the averments that defendant did maintain such rate and side track, after it had agreed to do so. (3.) The averments of the complaint fail to show a valid contract on the part of defendant to maintain either of said rates or to maintain said side track, and it is not alleged that defendant fraudulently induced plaintiff to open said sand pit or fraudulently promised to maintain such rates and said side track. (4.) The allegations of the complaint fail to show that defendant owed the plaintiff any duty to maintain such rate, or said side track, arising either out of contract or tort.

To the second and third counts the defendant demurred on the ground that there was a misjoinder of causes of action, in that the first count of the complaint was in assumpsit, and the second and third counts of the complaint were in case. The court sustained the demurrers to the first, second and third counts of the complaint. Thereupon the plaintiff, by leave of the court, filed additional counts numbered four, five, six, seven and eight. These counts of the complaint alleged substantially the same causes of action as were contained in the second and third counts of the complaint, and set out more in detail what had been done by the plaintiff preparatory for carrying on his work, and the damages resulting to him by the acts of the defendant in taking up the side track and increasing the freight rates per car load. To each of these counts the defendant demurred upon the same grounds as were interposed to the second and third counts. The court sustained the demurrer to each of the counts, and the plaintiff declining to amend his complaint, or to plead further, judgment was rendered in favor of the defendant. The plaintiff appeals, and assigns as error the rulings of the court upon the pleadings, and the rendition of judgment for the defendant.

N. B. FEAGIN and JAMES E. WEBB, for appellant.
1. The court erred in sustaining the demurrers to the
original count in the complaint. That count is not a
count in assumpsit as was supposed by the attorney for the
railroad company who demurred. It is a count in case.
2 Am. & Eng. Encyc. Law, p. 903, cases cited in note 3;
*White v. Levy*, 91 Ala. 178; *Mobile Insurance Co. v. Ran-
dall*, 74 Ala. 170.

The statements made in the 1st count of the agreement
with reference to opening the pit are stated *as a mere
matter of inducement.—Whilden v. Merchants Bank*, 64
Ala. 27. It is from the facts stated in the body of the
count the question must be determined; and when these
indicate that the plaintiff is proceeding for a measure of
recovery adapted to only one form of action, it must be
intended that the count belongs to that form of action,
whether it is *ex delicto* or *ex contractu.—Frinch v. Potter*, 17
Ill. 406; 2 American and English Enc. of Law, p. 903;
Hutchinson on Carriers, §§ 740, 744, 745 and 749; *St.
Louis Railroad Co. v. Heath*, 18 Amer. and Eng. Railroad
cases, 557; *School District v. B. H. & Erie Railroad*, 102
Mass. 552.

2. The court erred in sustaining the demurrers to the
2d count in the complaint. The count is clearly *an ac-
tion on the case (N. O. & J. & M. N. R. Co. v. Hurst*,
36 Miss. Rep. 660,) for a breach of duty of the
common carrier to carry for a reasonable toll inde-
pendent of contract. It was the duty of defendant as a
common carrier, having established its side track and
switch at plaintiff's pit as a shipping point for shipment
of sand to afford plaintiff all reasonable facilities within
its power for such shipment.—*Reagin v Farmers Loan &
Trust Co.*, 14 U. S. Rep. 1047; 2 Am. & Eng. Enc. Law,
p. 790, note 1; cases cited in the notes pages 56, 57 and
58 of 29 Amer. & Eng. Railroad Cases; 8 Amer.
& Eng. Encyc. of Law, 269; Field on Corpora-
tion, 480; *Williams v. Gas Co.*, 52 Mich. 502;
*Shepard v. Gas Co.*, 70 American Decisions, 497, and
note, page 486; Beach on Private Corporations, § 8034;
*Frinch v. Potter*, 17 Ill. Rep. 406.

WALKER, PORTER & WALKER, *contra.*—1. The con-
tract sued upon, as alleged in the first count of the com-
plaint, was void for uncertainty.—*Jones v. N. & M. V.*

*R. R. Co.*, 13 C. C. A. 100; *T. & P. R. R. Co. v. Marshall*, 136 U. S. 393; *Howard v. E. T., V. & G. R. R. Co.*, 91 Ala. 268; *Erwin v. Erwin*, 25 Ala. 236. The court below construed this count to be in tort, and for that reason allowed the appellant to file additional counts in tort. As an action in tort for false representations, which consisted in promises as to future action on the part of the promisor, the count is manifestly defective, in not averring that the promises, when made, were not intended to be fulfilled by the promisor.—*Bradfield v. Elyton Land Co.*, 93 Ala. 527; *Birmingham Warehouse Co. v. Elyton Land Co.*, 93 Ala. 549.

2. The defendant owed the plaintiff no duty to maintain a side track at the sand pit, independent of any contract.—*Jones v. R. R. Co.*, 13 C. C. App. 95; *R. R. Co. v. Southern Express Co.*, 23 Amer. & Eng. R. R. Cas. 545; 2 Amer. & Eng. Encyc. of Law, 787; *Johnson v. Midland R. Co.*, 18 L. J. E' ch. 371; *Butchers & Drovers Stock Yards v. L. & N. R. R. Co.*, 14 C. C. A. 290.

3. An action for damages can not be maintained against a common carrier for refusing to transport a patron's goods at a reasonable rate unless it is shown that an offer or tender of the goods for shipment was made to the carrier.—3 Wood Railway Law, § 426; 2 Rorer on Railroads, 1371, § 7; *Railway Co. v. Sutton*, L. R. 4 H. L. 238; *L. & N. R. R. Co. v. Flannigan*, 32 Amer. & Eng. R. R. Cas. 532.

HEAD, J.—There can be no doubt whatever that the original action was *ex contractu*. There is not the semblance of an allegation of a breach by the defendant of a public duty, as a common carrier. The complaint shows that the side track was put in for the exclusive use and benefit of the plaintiff, in pursuance of an express agreement to that effect; that the freight rate, the increase of which is complained of, was created and maintained by, and in pursuance of, an express agreement of the parties. Other than this agreement, there is no allegation whatever, having the remotest tendency to show what was or is a reasonable freight rate. So far as shown, the increased rate demanded, was just and reasonable, if it violated no binding contract for a lower rate. The sole complaint is, that the removal of the side track and the increase of the rate, violated the agreement

into which the parties had entered, with the resultant damages to the plaintiff specified. The duty of the defendant, as a common carrier, stated generally, was to receive freight properly tendered for carriage, and safely carry and deliver the same, according to proper directions of the shipper, upon the payment of reasonable toll. We read the original complaint, in vain, to find a charge of the breach of this duty. Nor is there alleged any special duty to plaintiff, growing out of a contract, and not directly within its stipulations. Why was it the duty of the defendant to erect and maintain the side track? Because, it had expressly agreed with the plaintiff to do so for his exclusive use and benefit. Is there a conceivable duty to plaintiff growing out of that part of the agreement, which is not directly involved in the stipulation itself? Why was it the defendant's duty to carry plaintiff's sand at $8 per car? Because it had expressly agreed to do so ; and there can be no duty growing out of this part of the agreement, in reference to the amount of freight charged, that is not directly involved in the stipulation itself. The only defaults or wrongs charged against the defendant, are its refusal to maintain the side track to the sand pit, and the imposition of $12 per car freight charge. It can not be contended, if the contract had been of such character as to be binding, that an action would not lie directly upon these stipulations, and that the damages claimed in the complaint (or such thereof as are recoverable at all) were the proximate result of the breach of the stipulations recoverable in such action. See *White v. Levy*, 91 Ala. 175.

It is not, and cannot be, disputed that each of the counts subsequently introduced by amendments were in case, and the court committed no error in disallowing and sustaining demurrers to them.

The contract set up in the original complaint is void for uncertainty and not legally enforceable. It was determinable at the will of either party. The demurrer to it was properly sustained.

Affirmed.